CHARLES CARROLL, Judge.
The defendants, the lessors under a lease, appeal from a declaratory judgment relating to provisions of the lease for subordination by lessors.
The lease was made in January of 1947, for a term of 99 years. It covered five lots, Nos. 20, 21, 22, 23 and 24 of a block in a platted subdivision in Miami Beach. The provisions of the lease relating to subordination appear in the first of the mutual covenants. The pertinent portions thereof are as follows:
“The demised premises is divided into five parcels. Attached hereto and made a part hereof as though fully set out herein is a plat of said demised premises showing how the same is divided into five parcels, each parcel comprising one lot. The Lessee may erect one or more buildings upon the demised premises or any part thereof. In the event that the Lessee elects to erect one building on the entire demised premises, then the Lessors shall be required to subordinate to only one mortgage on the entire demised premises in the manner hereinafter provided. In the event, however, the Lessee elects to erect more than one building on one or more of the parcels comprising the demised premises, the Lessors shall be required to subordinate to separate mortgages, each to encumber only such portion of the demised premises actually improved. As each portion of the platted lots are mortgage the adjacent portion of the out lots above described may likewise be encumbered without improvements being erected on such adjacent portion of the out lots. It is specifically covenanted and agreed by and between the parties hereto that the Lessors do hereby agree to subordinate the fee simple title of the demised premises as here-inabove described, and the improvements to be erected thereon, and the furniture, furnishings and equipment therein contained, by joining in the execution of one mortgage which shall encumber the entire demised premises, or by joining in the execution of separate mortgages, each encumbering one lot or combination of lots, which said mortgage or mortgages, as the case may be, shall be a valid and subsisting first lien. * * *
“The Lessors shall not be required to join in a mortgage encumbering the property hereinabove described until such time as the Lessee shall have complied with either of the following conditions :
“(a) The improvements which shall be erected shall have been fully completed and fully paid for to the end that no person, firm or corporation shall be entitled to a lien or right to lien for any work, labor or materials furnished.
“(b) The Lessee shall have established the cost of the construction of improvements by obtaining a valid contract for the erection thereof with a reliable and bona fide contractor for a stipulated *640 price, such contractor to be the person, firm or corporation who shall actually erect such improvements. * * *
“The parties hereto covenant and agree that the demised premises, consisting of five lots as shown on the attached plat which is made á part hereof as if fully set out herein, may be divided into separate parcels as the Lessee deems fit, each parcel comprising one or more lots. It is specifically covenanted and agreed by and between the parties hereto that the Lessee may erect separate improvements on the demised premises, that- is to say, the said Lessee may erect improvements on each of the lots of said demised premises or combinations thereof. The cost of said improvements shall be determined in the same manner as here-inabove provided. Should the Lessee deem it expedient to obtain separate mortgages, in the event separate improvements are erected to the end that each of the lots or combinations thereof be encumbered by separate mortgages, then and in such event the Lessors covenant and agree to subordinate the lot or lots separately to a first mortgage under the same terms and conditions as herein-above provided.
“It is further covenanted and agreed by and between the parties hereto that the demised premises, or individual lots or combinations thereof, during the term herein granted, shall be encumbered by only one original mortgage (or separate mortgages if the method in preceding paragraph is used), and that shall be the mortgage hereinabove provided. Said mortgage shall not in any manner whatsoever be renewed, extended, modified, altered,, changed or increased subsequent to its being perfected. Upon said mortgage or mortgages being perfected, said demised premises shall not thereafter be encumbered in any manner whatsoever, it being the intention of the parties hereto to encumber the said demised premises with only one mortgage and to have the same remain free and clear and unencumbered subsequent to the time when said mortgage shall have been paid in full."
In other provisions of the lease, which we will not quote, in the interest of brevity, it was disclosed there was a building located on a portion of the property at the time the lease was made; authority was granted to raze the building and that as to any new construction placed on a lot or lots, for which the right to subordination should be exercised for the benefit of a mortgage thereon, if such improvements were destroyed by fire or otherwise, or should be razed by the lessee and then rebuilt, no second or new subordination would be made for the portion of the property thus affected. The appellants stand in the position of lessors, having acquired the title subject to the lease. The appellee holds as assignee of the lessee. From the pleadings it appears that after the inception of the lease the building which was located on a portion of the premises was razed, and an apartment building was erected on lots 20 and 21, in connection with which the owner-lessor subordinated the fee to a mortgage placed on those lots as improved.
In the complaint for declaratory judgment, filed by the (assignee) lessee on August 13, 1968, it was alleged the lessee intended to raze the apartment building located on lots 20 and 21, and to erect a new six story apartment building on lots 22, 23 and 24, and to erect a parking garage building on lots 20 and 21 for use in connection with the new apartment building which was to be erected on the other three lots.
The position taken by the lessors in their answer and counterclaim was that it should be held that the lessee was not entitled to raze the apartment building on lots 20 and 21 for the purpose of replacement thereof by a parking garage, because the value of the latter would be less than the existing structure and therefore would result in an *641 impairment of the lessor’s security. A further and principal contention pleaded by the lessors was that because the lessee had elected to erect an apartment building on lots 20 and 21 and had obtained a subordination of the fee to a mortgage placed thereon, that that one subordination fulfilled the entire obligation of the lessor with reference to subordination, and that the lessor could not be required to subordinate the fee in favor of mortgages placed on any improvements which might be built on other lots (22, 23 or 24).
It appears however, that at the time of the assignment of the lease to the appellee the lessors, incident to that transaction, gave the lessee a letter, designated as an estoppel letter, wherein it was certified that the lease was in good standing, and which contained the following:
“3. That where in subparagraph (b) of Paragraph First of the article entitled ‘Mutual Covenants’ (said subparagraph (b) appearing on Page 19 of said 99 year lease), the words, ‘construction loan’ appear, it is intended to mean a combination construction permanent mortgage and not a construction loan mortgage alone. Said construction permanent mortgage to be executed only by such institutions as conform to the requirement of the lease itself to issue a permanent mortgage or mortgages.
“4. That nothing in said 99 year lease contained is intended to prohibit the 99 year lessee from freely encumbering lessee’s interest in said 99 year lease without the subordination of the 99 year lessors; provided, however, that any such mortgage so made on the lessee’s interest in said lease is and at all times will be subordinate to the rights of the lessors in said lease and subject to all of the terms and conditions of the said lease required to be kept and performed by the lessee thereof.
“5. That as of the date hereof, the 99 year lessee has only used up the subordination privilege as to lots 20 and 21. The subordination privilege has not yet been exercised as to Lots 22, 23 and 24.” [Emphasis added.]
The trial court held that the lessor was obligated to subordinate as to a mortgage which should be placed on lots 22, 23 and 24 upon construction of the intended new apartment house thereon, and that the lessee was entitled to raze the apartment building presently located on lots 20 and 21, upon compliance with the lease provisions relating thereto. No ruling was made with reference to the question of a second subordination on lots 20 and 21 upon construction thereon of the intended new garage building.
In reaching that decision the trial court construed the lease as providing that “all lots must be subordinated at one time,” but that by virtue of the estoppel letter the parties had provided for subordination of the “remaining three lots which are the subject matter of this litigation.”
We do not agree with the trial court’s interpretation of the lease as providing that all lots must be subordinated at one time, but we affirm the judgment on other grounds. In the covenant of the lease dealing with subordination, provision was made for subordination of all of the lots at one time, only if the lessee erected one building on the entire premises. Otherwise, it was provided in the covenant that in event the lessee constructs more than one building on one or more lots the lessor would subordinate to separate mortgages thereon, each encumbering the part of the property so improved. There was language therein (referring to the effect on the out lots) which indicates it was contemplated that buildings might be erected on each of the lots, at different times, with the benefit of subordination for each of the separate mortgages resulting.
The provisions of the lease do not support the contention of the appellants that after a subordination has been made to a mortgagd placed incident to construction of a building on a part of the proper *642 ty, the lessor would not be required to subordinate to a mortgage or mortgages on a building or buildings subsequently erected on another lot or on other lots, hot previously improved. We hold, therefore, that the decision of the trial judge was in accordance with the provisions of the lease as contained in the covenant relating to subordination.
If the lease had provided otherwise, and as contended for by the lessors, the es-toppel letter, given by the lessors at the time of the assignment of the lease to the appellee, would not have operated to modify or amend the lease to require additional subordinations not thus provided for in the lease. This is so because of the final paragraph of that letter, viz: “That the giving of this estoppel shall in no wise be construed as a modification of said lease or any of its amendments, or as requring the lessors thereof to amend • or modify the terms and conditions of said lease.” However, the statements in the lessors’ estoppel letter, “That as of the date hereof, the 99 year lessee has only used up the subordination privilege as to Lots 20 and 21. The subordination privilege has not yet been exercised as to Lots 22, 23 and 24,” represented a construction of the lease by the lessors which was in accordance with the meaning we assign to it, and consistent with the decision rendered by the trial court. While we regard the wording of the lease to be clear beyond the need to resort to canons of construction, it is a rule of construction that in determining the meaning and intent of a contract that which is placed upon it by the parties is entitled to be given some weight.
However, the covenant did contain a provision to the effect that when subordination had been made to a mortgage placed on a part of the property upon which a building is placed, no second subordination would be made for any other or subsequent mortgage on that part of the real estate. Thus, in event that a structure first erected is destroyed or razed and then replaced with another building, the lessors could not be required to subordinate to a new mortgage placed incident thereto.
Accordingly, the judgment of the trial court is amended to decree that the lease does not obligate the lessors to subordination to any new or subsequent mortgage on lots 20 and 21, in event that the apartment house presently situated thereon is razed and replaced by a new (indoor garage) building such as it is alleged is intended to be constructed on lots 20 and 21.
The judgment, as herein amended, is affirmed.